Good morning. My name is Amora Spadus. I'm with the California Attorney General's Office, and I represent the appellant in this case, the State of California, and the warden in this case. This is a case in which a physician whose license had been revoked and who had been barred from treating women, and was later charged with sexual misconduct in particular, sexual penetration by a foreign object during the course of the vaginal examination. There were three issues that were raised, three bases by which the district court reversed the state judgment. The issues that I'm presenting here, that we're arguing here, relate to deference, deference under the AEDPA, deference to state court decisions, deference to the determinations by a state court as to whether an attorney was reasonable in the manner in which he defended a defendant, and also deference to the reasonableness of a state court decision. Let me address first the ineffective assistance of counsel claim. The case that this particular attorney confronted, again, involved a he said, she said, and also medical board said. The medical board said that his license is revoked and that he is barred before the revocation from treating women. That's what the defense attorney had before him. That's what the jury was going to hear, that the defendant's license was revoked and that he had been barred from treating women. What did the case involve? The case involved two women who charged him with sexual misconduct. Any jury having heard that he was barred from treating women and that his license was revoked and then hearing two witnesses or two victims claiming sexual misconduct would have assumed something that I think all of us would assume or infer from the board proceeding and board conclusion and revocation of a physician's license. The defendant's attorney had to confront this. He had to confront the fact that the jury was going to know that the license was revoked and that this particular physician was barred from treating women. And he did this by using information that the jury would otherwise anyway have learned about, which is that there were claims filed by women against him with respect to vaginal examination. And how does the jury at the time that these allegations was he barred totally only part of the time. In other words, how would the jury learn both things, that his license had been revoked and that before that he was barred from treating women? Well, he was barred from treating women as of 1993. Okay. And the allegations began in 1993, 94 and ended 1995. And then his license was revoked. In 1995, but about three months, he was continuing to treat women, the victims in this case, two or three months after his license was revoked. Was totally revoked. Right. And there was no dispute that the jury would hear revocation of license bar against treating women. Now, the defense attorney had to confront that. How is he going to defend the defendant when the jury knows he couldn't treat women and he treated women and his license was revoked? And the inference would be it was revoked because of the way he treated women. And these were the claims presented to the jury. The defense attorney proceeded to then say, okay, the way we'll do it is we will turn the bad into the good. We will establish that the claims in this particular case by these two victims were simply plagiarism of a claim filed by other victims or other claimants in connection with the revocation proceedings. There was very little downside. The jury knew his license had been revoked and had been revoked in connection with his treatment of women. He was, the defense attorney in this particular case, was trying to capitalize on what was obviously going to go to the jury. And he was also going to try to establish for the jury by means of testimony from the defendant, the physician, that the revocation of his license did not result from sexual misconduct. Unfortunately, there was an objection to a question by the prosecution, and the trial court sustained the objection on the basis of hearsay and a legal law. Was that predictable by a reasonably competent attorney? It was hearsay. Was it predictable that the prosecution would object to what was part of the record, that the proceedings which were undisputed? I don't know. I think a defense attorney, knowing that he had to present this kind of evidence and knowing further that it was undisputed that the State Board, the medical board, did not revoke his license because of any sexual misconduct, would have perhaps assumed fairly so, reasonably so, that the prosecution would not object. The prosecution did object. Well, we get these all the time, EEOC determinations in labor and employment cases, internal affairs findings in civil rights cases where counsel for the plaintiff is always trying to introduce the result of the administrative determination in an attempt to influence the jury by arguing that, well, if the administrative agency found in my client's favor, then you should, too. And to follow up on Judge Canby's question, isn't the case law pretty clear that that's impermissible? I can't think of a circumstance under which a trial court would ever admit the result of an administrative hearing where the same issues are now being tried to a jury by perhaps even a different standard of proof than may have attended the administrative proceeding. Well, again, the evidence was being presented to the jury about what was happening at these proceedings. But it's the ultimate legal conclusion that counsel is trying to introduce from the administrative hearing that he wants the trial court jury in Solano County to hear in the hope that they will conclude that, well, if the medical board found that he had been engaged in sexual misconduct of patients, then we should, too, in this criminal case. Well, what was the downside in the defense attorney trying to do that? Opening the door to the fact that he had been restricted, I guess. No, that's already in, Judge. But you're saying, and the inference would have to be that because the board found that he had engaged in misconduct involving the women. If the jury knows, and it had to know because it was coming before it, that this particular physician was barred as of 1993 from treating women, and in 1995 his license was revoked, what is a reasonable juror going to infer from that? Right. Okay. I see your point. So the trial attorneys, he forwarded, he forwarded, forward, and he attempted to turn something from its head onto its feet and try to show that these particular witnesses, these victims, are claiming to be victims because they knew about these other claims. They're simply taking others. Pardon? How many others did he bring out? Ten. I don't know if the exact number came out. There were about ten others. But the point is that there was no evidence presented at the trial. Remember, the question, and this is something that a trial attorney is always asked, a question that even when there is an objection, the jury hears the question. Did the Board revoke your license because of sexual misconduct, prosecution, objection, hearsay? No further evidence by the prosecution that the revocation resulted from any kind of sexual misconduct. In fact, even the district court in its order referred to the fact that the prosecutor mentioned in passing during closing argument that the medical board, quote, took Petitioner's license for gross incompetence. So the jury could infer that despite all these claims, the license, the ticket got pulled because of incompetence, not because of sexual misconduct. And what is the downside from a defense attorney attempting to do that, to present evidence that, yes, there were many claims filed and that those claims are being replicated, duplicated, repeated here by people who want to sue and are suing the defendant to make money? And that's the only place they got these claims from. The claims are in there inferentially. The jury knows his ticket's been pulled. He's been barred from treating women. Now the defense attorney tries to turn it upside down and make it beneficial to the defense. Every judge other than the district court that viewed that strategy said, okay, it didn't work out, but there was nothing objectively unreasonable about it. And remember again that under the United States Supreme Court precedent for ineffective assistance of counsel claim, we've got not simply deference under the Strickland standard that you assume that the trial court, the trial judge, sorry, trial attorney was reasonable or tried to do what he was supposed to do, but you also defer to the state court determination about the reasonableness of the trial attorney. So you've got a double deference, deference to the second order. Here we have a district court saying no to all of the judges and magistrate, federal magistrate, who viewed these facts before and found no deficient performance. Let me go to the next two issues. Both involve a juror, Juror A. The first one is also, again, a deference question. There's a question of bias by this juror. Was this juror biased? She apparently knew the defendant as a physician. And that came out during Wadir. But apparently there was a claim made by other witnesses and there was an evidentiary hearing as to whether she was biased against that defendant, against the physician, and failed to fairly fully and honestly disclose it. Again, was an evidentiary hearing at which the trial court, the state court, believed her, gave credibility to her testimony and rejected the testimony of the adverse witnesses on this issue. The state court found that there was no bias, that there was no misconduct by the juror, Juror A, in this particular instance. Magistrate judge also found no misconduct. Goes to the district court, and the district court, without holding an evidentiary hearing, rejects the credibility determination of the state court, of the judge that actually saw the live witnesses, that viewed the evidence. That is in defiance of the deference owed to presumptively valid state court determinations. You cannot defeat a state court determination of fact unless you can show by clear and convincing evidence that it was wrong. And if it was wrong under clear and convincing evidence, it's objectively unreasonable and fails under the AEDPA. Here, again, there was a credibility determination based on a record that shows that the juror in this particular instance denied being biased. Shows that the witnesses against her made claims that years earlier, a decade earlier, she had made some unflattering remarks. But they couldn't even remember what the context was. There was a VA investigator who read from his notes and said something about odd, that she said something odd. She denied it. The trial court said, I don't know if she really said that. Maybe it's something that he wrote in his notes characterizing what he understood she said. But he believed her and not the other witnesses. There is a credibility determination here, and the district court, not having ever seen a single live witness, determined credibility adversely to this presumptively valid State judgment. So, Mr. Bates, when Judge Carlton found at excerpt of Record 263, I note that Layfield, who is the investigator testimony, posed a serious issue which was disregarded by the State court. What's your response to that? It was not disregarded by the State court. That's just plain not true. It's not true. The record is before the court. The trial court looked at and commented on the Layfield's testimony, noted that he basically was reading from his notes. Whether his notes were accurate reflections of what the juror said is, again, a question for the triar of fact, who sees the witnesses. It seemed to me in reading Judge Carlton's order, I'm looking now at page 264, he cites a number of irregularities in Juror A's testimony with regard, he says, even though standing alone they might not be sufficient, cumulatively I find that she was not credible. What is your position with regard to what a Federal court can do in reviewing factual determinations? There must be some instance in which we can look at a State court's factual determination and conclude that it is clearly erroneous. Certainly. Under, I believe, 2254e1, State findings are presumptively correct unless defeated by clear or rebutted by clear and convincing evidence. And isn't the way to do that to cite to specific inconsistencies in the record that does not support the trial court's, or in this case, I guess it was the trial court, the superior court's factual determination? Well, sure. If the record shows clear and convincing evidence that was developed in the State court defeating the State court's finding of facts, the Federal court must, under its obligation under AEDP, overturn the judgment. But that's not the case here. We have here a credibility determinant. We have substantial evidence supporting the trial court's finding. We have a presumption of correctness. Now, we go to 2254e2. Now, a State, a Federal district judge has authority, discretion, to order an evidentiary hearing in order to listen to evidence that was developed or could have been developed or was attempted to be developed in State court, to see whether that evidence rebuts by clear and convincing evidence the State court finding. But we don't have an evidentiary hearing here. We have nothing. We just have a judge looking at a piece of paper with ink on them and determining the credibility of live witnesses that a real live judge saw real live. I've never seen anything like that. And I'm sure you haven't either. Kennedy, would you like to, since time is getting short, address the, whether the juror referred to extraneous, brought in extraneous knowledge outside the record, you know, outside what was RAN? That, I think, is an issue of law. We have other issues where, you know, and that one is one of prejudice, because although the State court, court of appeal, did not go to the merits of the actual claim, it essentially found that there was no prejudice. Two of the judges, two of the three, found that there was misconduct by the juror by introducing extrinsic evidence, but found, again, as every judge other than the There was no prejudice in this case for a simple reason. The matters that were presented or raised by this particular juror, she was a judge. Sorry. She was a nurse. And she raised technical medical issues that were presented by a. She said, you know, he might have been injecting something else because this isn't the way you inject what he was injecting. She was commenting on evidence that was presented. She made conclusive, determined, or she suggested inferences that she drew from the evidence that was presented and raised it before the other jurors, apparently. The nurse. I guess when you get to prejudice, it seems to me what I think maybe the district court was looking at was the fact that the basic complaint in this case involves sexual activity by the doctor against these two women. It must have consumed most of the hours in a week. And by the end. And I suppose he thought that a jury under slightly different circumstances might have deemed it incredible. Well, the problem is, I think the information, the technical comments that she made about this medical evidence that was introduced by various experts as well as the defendant was immaterial, was trivial. It didn't really go to that. The issues at trial judge were the frequency of these vaginal examinations, the duration of these vaginal examinations, the manner in which those vaginal examinations were conducted. Now, the defendant himself admitted frequency, I think, to a degree. To a degree, but not to the frequency, not the frequency that was charged. Yeah. Okay. So what was really happening here was how often, how long, and what did he do with his hands. The stuff here, the issues, the subject matter that was raised by this particular juror was trivial and irrelevant in light of the overall prosecution. It was the issues, again, raised and commented on were not issues in dispute during the trial. Neither the prosecution nor the defense dealt with these issues, was concerned with these issues. They were basically technical in terms of the length of the needle, in terms of the slides and how estrogen, the level of estrogen is determined. That's not what this case was about. This case was about duration, frequency, and manner of gynecological or vaginal examination. The issues raised, although arguably there was misconduct here, but it was irrelevant in terms of the overall picture, or immaterial in terms of the overall picture, and certainly harmless under Brecht. I have no further statements. Unless the Court has any questions. Thank you, Mr. Bates. Thank you. Good morning, Your Honors. Good morning. Please, the Court. George Katsourilis on behalf of the appellee, John E. Parkinson. If I may, let me begin with the juror bias issue in responding to some of these comments. And because that's structural error and isn't subject to a harmless error analysis, the State suggests that. Is it structural? I thought in Mancuso we rejected that categorical approach and said you actually have to look and see whether there's real prejudice here. I think you do on habeas. I don't think that at the trial level. I think we do under Brecht. That's true. I think, however, that the harmlessness, finding a bias of a juror harmless, is a particularly difficult thing to do. And historically, it has been dealt with as a very serious and constitutional error. Well, but in small communities, it's not unusual to have jurors who know the defendants. And there's no allegation here that she denied ever knowing him. I mean, didn't she admit during voir dire that she worked with him at the nursing home? She did admit that. And she did. However, she denied. She said that she had worked with him in passing, said that her contact with him had been relatively insignificant. Subsequent to that, it came to light through a nurse that she had worked with that she had made comments to the effect that she didn't trust him, didn't like him, and thought he was a bad doctor. But now we have a factual credibility determination based on the post-conviction hearing by the judge who says, essentially, I find her to be credible and I don't find her to be biased. Don't we have to give a substantial amount of deference to that factual determination as to her credibility? Your Honor, the Court does have to give deference to it. But the Court doesn't have to give unlimited deference to it. Of course, there was considerable evidence that there was bad blood between this nurse to Lacy and that in this case, juror A had reported her and then resigned, and they'd never spoken from that moment on. So there's quite a bit of evidence with regard to the bad blood between that witness and juror A. Actually, Your Honor, there is not credible evidence, and let me explain why not. The district court was not obliged to defer to that determination or any of the other ones if they were objectively unreasonable. And a close examination of the record of this hearing really shows the unreasonableness of this. The exact comments that Your Honor just pointed out, this juror claimed that for the first time at this hearing, the district attorney investigator had gone out to see her two weeks earlier. She never said any of those things. However, it was worse than that. At the hearing, I asked her, did you tell this? And this is right in the record. Did you tell this to the district attorney investigator, the very things Your Honor just asked me about, that you'd had this acrimonious interaction with the Lacy, that you'd resigned because of it? And she says, I'm sure I did. And the district attorney investigator, the man who had been sent out there to bolster the prosecution case, to find out from her why Ms. de Lacy might be saying these things, got up on that witness stand five minutes later and said she never told me any of those things. She never said any of the things Your Honor just asked me about. Now, the district court looked to the reasonableness of disregarding, and make no mistake about it, the trial court absolutely disregarded that district attorney investigator's testimony. The district court examined that for reasonableness. Why on earth would the district attorney investigator get up and misrepresent what the juror said to him? Why would there be this contradiction between them? But that the ones that I've just addressed are the relatively minor ones. More importantly. But in doing so, the district judge made an assumption, without seeing the witnesses, that the DA's investigator had to be impartial and unbiased because he had no particular ax to grind. He was trying to bolster the prosecution's case. How can a federal district court do that in the absence of actually hearing and seeing the witnesses? When the superior court judges have the chance to see them both and to do what fact finders do all the time. I believe her, but I don't believe him. I mean, it's not unheard of for police officers to lie. It's not unheard of. Or forget things. It's not unheard of for police officers to lie or forget things. It is anomalous for a law enforcement officer whose job it is to bolster the prosecution case who was sent out to talk to this juror for that very purpose to get up and lie to the detriment of the prosecution. Now, he did not forget anything. He did not say he forgot anything. The district court was looking at the following things. His job was working for the prosecution. He was a 15-year law enforcement officer. He had no motive to fabricate anything. Well, if he had a motive, it would be to bolster the prosecution's conviction. Absolutely. That was what he was there for. The district court looked at that. He didn't forget a thing. The interview occurred two weeks earlier. So what the district court can do is look at the totality of the record and decide, is this facially unreasonable? And in this case, Your Honor, the answer is a clear cut, yes, it is, because not only did the district attorney investigator testify to that, but this juror told him two weeks earlier when he interviewed her that, in fact, she had known the defendant, that, in fact, she remembered him, that, in fact, she thought he was odd, that no one really cared for this guy when she worked with him, and that was her opinion of him. Now, the district court was troubled by that because that alone, all of which she withheld on four-deer, never told the trial court about, that alone is cause for serious concern about the impartiality and the bias of this juror. Who wants a juror sitting on their case who thinks that the defendant is odd or weird, who doesn't care for the defendant, knows him already, doesn't care for him? That's a problem, a big problem. Worse, this juror got up on the witness stand, and this the district court saw in black and white on the transcript. When I asked her, did you say those things to the district attorney, to the district attorney investigator? No, I did not. Each question. Now, the State keeps gainsaying this. In oral argument, they've done it today. They do it in their brief, saying, well, maybe that was some kind of a characterization. Maybe she didn't remember having said that. I asked her specifically, and this is right in the clerk's, excuse me, in the excerpt of record, that I asked her specifically whether or not at ER 86, on the excerpt of record, is it your testimony that you don't recall saying those things, or is it your testimony that you did not say them to the district attorney investigator? Her answer was, my testimony is that I did not say those things. She said the same thing about the things that Your Honor just asked me about a moment ago. I'm sure I told him about these other instances with Ms. DeLacy. The district attorney investigator got up on the witness stand minutes later and testified about how she had told him all those things, that she thought the petitioner was odd, no one ever cared for him very much, and that she had not told him anything about a falling out with Ms. DeLacy or having resigned because of or an angry telephone call with Ms. DeLacy. This man had absolutely no reason to do those things. And we have a factual finding by the superior court judge that Juror A was essentially consistent throughout in the story that she told. He made that finding, Your Honor, but under all of the applicable case law that's been cited to this Court, deference does not mean that a trial court can hide an unreasonable finding under the veil of credibility or under the veil of a factual finding. The hard, cold reality that comes out in this transcript is that this juror had been anything but consistent and that, in fact, she had misrepresented what she had said to the district attorney investigator time and time again. The district court then looked at the totality of this, which is his obligation. But isn't the real solution, if you've got that kind of a dilemma as a Federal District Judge on habeas review, to call a hearing and have those witnesses brought in so that you yourself can reassess their credibility? I don't think that's his obligation in the face of... Can he do it? Does he have the authority to do it? He has the authority to do it. Does he have to do it? Absolutely not. In the face of these kinds of contradictions that make no sense, the definition of if we can square this, can we look at this record and make sense out of it in terms of defending that State court finding? And the clear-cut answer is no, we can't. There's no reason for this man to get up on the witness stand and convict this juror. There's no way in the world that that district attorney investigator was lying about what she said. Now, if that's the case, you cannot square the testimony of this juror with the testimony of that district attorney investigator. Moreover, the district court was the first court, and I remind Your Honor that the statements about earlier courts making these findings, if the inquiry ended there, we would never have habeas review. The district court looked at the totality of this juror's representations and this quote-unquote consistency. This is the same juror who committed misconduct in the jury room. This is the same juror who testified, who told the district attorney investigator that she told the trial court about an illness that she had that was debilitating, when in fact the record clearly reflects that she never told the trial court about any of those things. This is the same juror who lied to the district attorney investigator. When you look at the totality of that, I think that the district court simply could not escape a finding that the factual determination made that this juror was not biased was simply unreasonable. It can't square with the testimony that was submitted below. What about the fact that the testimony that was actually introduced at the trial essentially bolsters her characterization of him? Bolsters her characterization? In other words, the evidence that came in of the way that he treated these patients strikes me as odd. And I'm certainly no expert on gynecologists by any means. And also, why couldn't a layperson on a jury without regard to nursing background, after listening to the frequency with which he gave these injections, conclude or speculate that he may have been giving something to them besides what he said he was? Well, the answer to that, Your Honor, is, first of all, he, and this is, I take serious issue with what the State said a few moments ago. He denied both the frequency and the duration of these treatments. Well, that was the key issue in the case, as you're saying. It was a very important issue, as was another important issue, as was his treatment of them reasonable as he related it. In other words, it was his testimony reasonable. What the jury did not. The jury heard expert testimony on that, did they not? It did. And by their verdict, presumably, they credited the State's theory over the doctor's claim. As a result of the misconduct of this juror, who went into the jury room and tipped the scales provided. As a result of the misconduct or as a result of the evidence that they heard from the experts who said this was not proper medicine? There were four experts. Two of them said that it was proper medicine. Two of them said that it wasn't. Whether or not it was proper medicine, depending. I guess the problem I'm having with your extraneous characterization is typically when I think of something being extraneous, it's something that gets brought into the jury room that never occurred in the courtroom. Whereas it seems to me, and I think this is what the State appellate court found, that an awful lot of what you characterize as extraneous is sort of fair inference or comments that jurors could make after listening to the conflicting testimony of the experts. Assuming that they credited the State's experts and not the defense. That's not extraneous evidence admitted into a jury room, at least in my experience. That would be the case if that were what happened here, Your Honor. What the State court, what the majority of the State court of appeal found was that, in fact, it was extraneous and that it was extrajudicial. That it was not prejudicial. That it was not prejudicial. And that was erroneous for the following reasons. She said that his manner of producing slides was not credible, was anomalous. She said that he was the suggestion that he might have been injecting these patients with something other than Estrone was never made ever by any other expert at trial besides this juror. But does an expert have to specifically say that when the jury has heard exhaustive testimony with regard to the frequency with which the injections were given, the location on the body where the needle was placed? Why isn't that a fair inference that a fact finder can make after listening to all that testimony? Because, first of all, the jury heard conflicting evidence as to those things, Your Honor. Okay. But, again, assuming that their credit, and I think we have to, certainly, given the jury's determination, we have to assume that they gave more weight to the prosecution's experts than they did to the defense. Well, I think that the court has to factor in the jury misconduct. Your argument is she had a finger on the scale. I think a big one, because no one ever, no expert said anything from which you could draw that inference that he was injecting something other than Estrone. Well, I guess that's the question that's bothering me. I don't see why that's such a leap. Because she said that if you injected it with an insulin needle, it would cause irritation that none of these witnesses testified to. That's what she told that jury. No expert ever said that. No expert said you couldn't inject it that way. No expert that you find that nowhere in the record. And the State will not be able to point to anywhere in the record where anybody said anything about irritation being caused by injecting it in this way. From there, she suggested that that meant that he was injecting them with something other than what he said he was injecting them with, something that was devastating to his credibility. Your Honor, I remind the Court. He got up and said, I did not treat them as frequently as they said. I injected them appropriately. I treated them appropriately. I treated these people more often than not once a month, periodically. Only once did he ever admit treating someone as much as three or four times a week, and only because their symptoms had gotten very serious. He categorically disputed the versions of the complainants regarding the frequency, the duration of treatment. And this was devastating to his credibility, very similar to the Sassoonian case, in which credibility is determined by the misconduct of the juror. When you add that to the evidence of bias, in this case to the lies that this juror – and there's no other way to characterize it – the lies that this juror told at that hearing, the district court really couldn't get away from its responsibility to decide whether or not this was an unreasonable determination of the facts below. And similarly, it couldn't get away from its responsibility as to whether or not in the misconduct area there was an unreasonable application of Federal law, which there was. Can you get to the – well, you've still got a little time left to the ineffective assistance. Yes, I was going to. Thank you, Your Honor. First of all, the tactical decision to bring in all of this other evidence, I think that that is an error and what the State says is wrong. There was a stipulation at the beginning of this trial that his license had been restricted and then revoked. That was all that was going to come in. The tactical decision was bad. Restricted to what? Excuse me? That his license was restricted, but restricted to what? It was going to come out that it was restricted to the treatment of men because the defendant was going to testify. The stipulation at the beginning was that it had been restricted and that it had been revoked. However, what the – what counsel then decided to do was cross-examine the victims, the complainants, and bring out other complaints of ten other women that would never have come in and suggest that these complaints were identical, which they were not, and the record reveals that they were not. Then, if that was the tactical decision that was predicated on showing that the medical board decided that it was not sexual, which it did, counsel was completely unprepared to prove that, which I agree with the Court's comments earlier. I don't think he was entitled to do. Then there was no explanation for his sitting by and letting the prosecutor argue again and again and again that the medical board had rejected the defendant's defense, that it had made essentially the same finding and had rejected his position, and that in fact the medical board had made a finding of sexual misconduct. That error is indefensible. So it was a bad tactical, unreasonable tactical decision for which the counsel was totally unprepared to effectuate. Kennedy. But where did the State argue that the medical – you're saying the State said the medical board had found that there had been sexual misconduct? He argued repeatedly that the – that it was just like all the other women. This is Rt. 1233, 1235, 1236, and the district court cited these things repeatedly in its opinion. Those women at the medical board, the same allegations. They're liars, too. Everybody is out to get them. These other women whom he – some members of his church, all of them friends, all of them people character he vouched for until the time they came forward, characterizing the medical board witnesses as the same types of witnesses. But I thought you said a minute ago he characterized the medical board's findings as being of sexual misconduct. He repeatedly suggested that in cross-examination of witnesses, in arguments to the effect that the same arguments had been rejected by the medical board, thereby inferring that the medical board had made a finding of sexual misconduct when it had not. And then counsel was – Where in the – where should I look for that? I would suggest, Your Honor, to look at Rt. 1220, where he made the argument that the medical board had rejected the same defenses in response to the same allegations, 1235, 1236. And in the district court's opinion, under the ineffective assistance of counsel and the medical board, the medical board had not made a finding of sexual misconduct.  the medical board had not made a finding of sexual misconduct. And in the medical section of the district court's opinion, the district court addresses all of those sections. Okay. Thank you very much. Thank you, Your Honor. Mr. Bates, I'll give you two minutes on rebuttal since I let your opponent run over. Going back to the last comment by counsel, there was no statement by the prosecutor that the medical board revoked the defendant's license because of sexual misconduct. There is nothing in the record that says that, nothing by the prosecutor. As for the other issues, I only have about a minute and a half, and I'm only too happy to respond to any particular question that this Court may have. If we have anything further. If you have nothing further. I have about an hour or two further. Well, you've got about 90 seconds. Again, with respect to the juror misconduct question, the court held, the state court held a hearing and determined based on the credibility of the witnesses it heard that the juror was credible. There was no hearing in the federal district court on this issue, and there's no way that a district judge, any judge, could find that there was no credibility in a particular witness without ever seeing that witness. How about the likelihood of the investigator having completely lied, adverse, in effect, to the prosecution? You're going to the question that I was about to address, and that is that the trial court found that the testimony by the DA investigator was not as clear, as positive of the issue as counsel for appellee argues. The investigator was basically reading from his notes. It was unclear. There was some uncertainty as to exactly what it is that the juror actually said. Well, the fact that he's reading from his report would indicate that that was his testimony. Well, the trial court found that there was a little messiness in the report and that the report itself, if you look at the report, if you look at what was said, it does not clearly and unequivocally defeat the testimony of the juror. The fact that the investigator wrote the word odd does not mean that the juror ever said or used the word odd. It may be a characterization by the investigator of how the juror was speaking about the defendant, petitioner. That is something for the judge to determine based on the evidence that he hears, the witnesses that he sees. On that note, all right. Thank you, both counsel. The case just argued is submitted. We will take a short recess before we hear argument on a sealed matter at the end of the calendar.
judges: Hug, Canby, Tallman